JOHN E. COOK *v.* WILMINGTON CITY ELECTRIC CO.

*Electric Lighting Plant—Diligence—Contributory Negligence.*

A corporation, operating an electric lighting plant by means of wires running through the streets of a city, is bound to a degree of care and diligence proportionate to the danger that is liable to ensue from the dangerous agencies used. The corporation must use every means to protect the public from loss or injury and to make safe the public citizens passing over the streets unaware of danger.

Said corporation must immediately remedy any defect or break in its wires, caused from defects latent or patent or by unavoidable accident.

If one of the wires of said corporation be broken down in a storm and the plaintiff carelessly runs into the same and is injured, he is guilty of contributory negligence and cannot recover damages therefor.

(*New Castle, February, 1892.*)

ACTION for personal injuries resulting to the plaintiff from coming in contact with a live electric wire of the defendant company. (Facts fully appear in charge of the Court.)

Heard before HOUSTON and CULLEN, J. J.

*Levi C. Bird* and *Andrew Sanborn*, for plaintiff.

*J. H. Hoffecker*, for defendant.

CULLEN, J., charging the jury:

*Gentlemen of the Jury*: It becomes necessary for the Court to charge you in the case in which you have been empaneled, the suit of John E. Cook against the Wilmington City Electric Company. This, gentlemen, is a very interesting case, not that there are any new legal principles involved, because the principles which have already been decided in cases throughout the country and, I may say, in this State also, fully settle all the legal matters which are involved in this case; but every case, after all, must necessarily depend upon some peculiar fact or other upon which that immed-

iate case is based. I am not aware of (nor has there been pro-
duced here) any case in which are involved the immediate matters
which are involved in the trial of this case. This is a suit which
has been brought involving a certain state of facts; in other words,
it involves a great principle, in which the public are very deeply
interested, and that is the liability of persons engaged in a dangerous,
business, a business, too, which affects immediately, and very seriously
also, the life, limb and property of the public. Hence it is, that,
although as I say there are no new principles of law involved, it
becomes necessary for the court to explain to you what they think
is the law. And I exceedingly regret that our honored and learned
chief justice is not here to announce the principles of law which
are involved in this case, rather than myself; but, notwithstanding,
as it becomes my duty, I shall endeavor to announce to you here
as clearly as I can what I consider are the principles involved with
reference to the immediate facts growing out of this case, so that
you may be able to render a verdict which will be a matter of pro-
tection, that the public may understand, and that the company
carrying on a business attended with so much danger shall know
what duties they owe to the public.

This, gentlemen, is an action brought by the plaintiff, John E.
Cook, against the Wilmington City Electric Company, a corpora-
tion existing under the laws of this State, in whom was vested the
right to generate electricity for the purpose, etc., of lighting the
streets, residences and other places of business in the City of Wil-
mington. The plaintiff contends, that on the morning of the 24th
of October, 1890, at about 6 o'clock, when returning from his
night work, on a dark and drizzling morning following a storm
which had prevailed during the night, when passing along Ban-
ning street near his home, and in the walk used by the public, he
struck a live electric wire which had parted from the pole support-
ing the same, and was thereby greatly injured, not only for the
time being, but that it also inflicted on him injuries of a permanent
character which disabled him, to a great extent, from earning a

livelihood; that to the negligence of the defendants, was solely to be attributed his injuries, for which he sues for damages.

The only and sole question involved in this case is that of negligence on the part of defendants, provided the evidence offered by them does not show contributory negligence on the part of the plaintiff. In other words a negligence on his part such as contributed to cause the accident (supposing there was originally negligence on the other part) that by ordinary care he might have avoided. This company was vested with the power to erect poles and over them place wires in and along the streets and thoroughfares of this city, through which passed the currents of electricity. The agencies employed in this business were of such a nature and character as to be dangerous to human life, and in such cases the law requires that usual and ordinary care should be used, which in such a business as they operated, requiring and demanded a degree of care and diligence proportionate to the danger or mischief that was liable to ensue; the words usual and ordinary care, mean in such cases nothing more or less, than if there be great danger and hazard in the business, there should be a corresponding degree of skill and attention required by the law. This is not a case of master and servant, though the principle of law involved in such cases are in many respects applicable; there the servant voluntarily assumes and takes the risks and dangers of the business, but in this case, the defendants, as a corporation, are engaged in a business attendant with great danger to the lives of citizens, who have a prior right to pass through and along the streets of the city; the privilege of the community, using ordinary care to pass and repass the streets at all hours of the day and night when business requires, cannot be questioned or denied; and they have a right to expect, and it is presumed that the streets are safe to pass through. This principle has been plainly decided by our own courts in the case *Robertson v. The Mayor and Council of the City of Wilmington* in a decision rendered by Chief Justice Comegys. The privilege granted the defendants by the act of incorporation is one which involves the

use of a dangerous and subtle power, yet, as it has been said, but in its infancy ; a business, which if carelessly managed, or handled, endangers property and life; under such circumstances the law holds to the strict rule, or rather a reasonable and careful use of the powers conferred such as that the public may and shall be protected. What then are the legal liabilities and responsibilities resting upon a corporation possessing and using such powers. The law requires that they should use every way to protect and save the public from loss or injury they must use every means regardless of expense, to protect and make safe the public citizens passing over the streets of the city, who are not aware of danger; they must use due care and ordinary diligence in such cases, with the legal meaning in law following and attached to such words as I have stated. The corporation must use the means, and such as they have, to specially and at once remedy any defect in broken wires caused from defects latent or patent, or caused by unavoidable accident, or as it is commonly called, the Act of God. If by reason of want of a sufficient force of men, or horses, a break of a wire as shown in this case, is not at once, and within a reasonable time put in order, and loss thereby occurs to persons or property the corporation is clearly liable and ought to be, because a corporation when assuming voluntarily a business which necessarily involves great danger and risk to life, as to the public, takes upon itself a responsibility incident to the business. Now, gentlemen, I have thus given you the law as we believe applies to this case and to that law you are to apply the facts as proved at the bar of this court, for the facts it is not our province to deal with. Does the proof offered by the plaintiff in this case show you that he was injured in passing along a public street in this city, by reason of the breaking of an electric wire some time prior to 6 a. m., on the morning of the 24th of October, 1890 ? And did such injury occur by reason of negligence of the defendants ? You are to consider if it was the fault of the defendants, by reason of their negligence, that the wire broke, or if it was broken by reason of an unavoidable accident or storm unusual.

Did the delay on the part of the defendants, in not using due diligence and proper care to remove the broken wire, so that no harm could have happened, constitute negligence such as to cause liability? In other words, was there a delay beyond what was right and proper in the repair of the wire, whether that wire had been broken from unavoidable accident, as I have said, or by reason of the storm otherwise commonly called the Act of God; then there would be negligence here. Was there an unnecessary delay such as to cause negligence on the part of the defendant—in other words, did they discharge their duty? It is admitted that the defendants had the means of knowing when a wire broke or obstruction occurred, by meters and other means necessary and absolutely essential to the carrying on of their business. Now, in this dangerous undertaking, as I said to you, it has been shown—and it is necessary for persons using a dangerous electric fluid, to use such means as are necessary—it has been shown here before the court that there were meters and dynamos, and that the meter, by reason of its operation would show an obstruction, then in the exercise of that duty they should have immediately proceeded to carry out what was necessary for the public safety. Was there negligence on the part of these persons—and it is all a matter of evidence before you, because this whole matter must go to the jury to try. We only mention the facts which are not disputed, but of that you are the judges of whether there was negligence such as to satisfy you from the evidence as to cause a legal liability. Was the warning heeded, was ordinary care and diligence necessary to protect the public used? Did that wire break as described by two witnesses, not contradicted, at ten minutes to ten, p. m., or after; if so, the wire remained broken and a lurking death-trap to anyone who passed from that time till 7 a. m., a period of nine hours, before any effort was made to remedy this evil. Was that ordinary care according to the evidence which has been offered on this stand? Was it ordinary care and diligence as I have defined the same, on the part of the defendants?

But, gentlemen, it is contended by the counsel for the defendants, and we are asked to charge you—and we do so with pleasure —that the wire which it is admitted broke and fell in the street endangering life and limb, was carelessly run into by the plaintiff, when he could with ordinary care have avoided the same. Now if there be danger open and apparent, of which the plaintiff knows on the street, or if the deadly wire gave full warning by reason of the sparks proceeding from the same, and the plaintiff with his eyes open using no ordinary care, walked into the wire, he has no right to recover—for he contributed to his own injury. When a man is guilty of an act which causes his injury, though another be first liable of causing the danger, and by reason of a want of ordinary care on his part, takes the risk being fully warned, he is guilty of contributory negligence. That brings up the question, and that is a matter which you are to determine upon the evidence offered, whether this man deliberately walked into that wire with his eyes open. The law as laid down in the case of *Robinson v. The Mayor and Council of Wilmington,* by Chief Justice Comegys is that a man has a perfect right to walk the streets, and he may cast his eyes around if he pleases and look at the windows of the shops, and if a hole be open and he walks into the hole, the city is liable, because it is their duty to keep the streets safe, but if some unforseen accident occurred by reason of a storm, and while a man is passing along the street, as he has a right to pass, a wire falls upon him, then we must say, if it was an accident caused by the act of God, and irrespective of due care and diligence on the part of the defendants in this case, these defendants would not be liable. Whether this case is such a one, is your province to determine according to the evidence.

Now then, in conclusion, we will say to you that if you believe that this accident happened by an unavoidable accident by storm, and that if this party without any want of diligence or care on the the part of the defendants in this case, met with this accident, he (the plaintiff) is not entitled to recover. But if, on the other hand,

you believe that even though this was an unavoidable accident, that it was caused by a storm and that after accident happened, according to the evidence in this case—it being necessary that the company (as should be) exercised due care and diligence for the protection of the public—failed to do it for a period which is beyond a due care and diligence, they are responsible for whatever results may have followed, and you should render a verdict in favor of the plaintiff.

As to the amount of the damages, that is entirely with you. You have heard the testimony in this case. It has been laid down by this court that you should render a verdict for such reasonable amount of damage as you consider under the proof as offered in this case (if you should see fit to render for the plaintiff) he is entitled to. You should take into consideration all the facts and circumstances offered as to what that damage is. It is for us to express no opinion upon that matter.

I believe I have stated to you all that is necessary and now commit this matter to you.

Verdict for the plaintiff.